**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAMELA JOHNSON, ET AL.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA, ET AL.,** | : | |
| **Defendants** | : | **NO. 06-4826** |

**MEMORANDUM AND ORDER**

PRATTER, J.                                                                                    AUGUST 18, 2008

Pamela Johnson, Latiah Brown, and Deniece Harvey have sued the School District of Philadelphia (the "School District"), Philadelphia School District Police Officer Obie Hazzard, the City of Philadelphia (the "City"), and Philadelphia Police Officers Frank Harley and Anthony Rockemore pursuant to 42 U.S.C. § 1983 and state law for damages arising out of Plaintiffs' allegedly unlawful arrest and imprisonment stemming from an altercation on the grounds of a Philadelphia high school during school hours. Plaintiffs also claim that Defendants are liable for the use of excessive force, assault, battery, intentional infliction of emotional distress and malicious prosecution.

The School District and Officer Hazzard jointly moved for summary judgment on all claims brought against them. Plaintiffs filed an opposition to the motion as to Officer Hazzard. Defendants filed a reply brief. The City and Officers Harley and Rockemore also moved for summary judgment on all claims brought against them, except Ms. Harvey's excessive force claim against Officer Harley. The Plaintiffs filed an opposition to the motion as to Ms. Brown's excessive force claim against Officer Rockemore, Ms. Johnson's false arrest and malicious

prosecution claims against Officers Rockemore and Harley, and all three Plaintiffs' state law claims against both officers.  Plaintiffs have withdrawn Ms. Brown and Ms. Harvey's false arrest and malicious prosecution claims, as well as their claims against the City.

Because there are genuine issues as to many material facts, both motions will be denied as to all remaining claims, namely, Ms. Johnson's federal false arrest and malicious prosecution claims, and her state law false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress claims; Ms. Brown's state law intentional infliction of emotional distress claim; and Ms. Harvey's state law assault, battery and intentional infliction of emotion distress claims.  Ms. Brown's excessive force, assault and battery claims against Officer Rockemore, Ms. Johnson's excessive force, false arrest, assault and battery claims against Officer Hazzard, and all claims against the School District will be dismissed.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material face and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the moving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

In the context of summary judgment, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  If, after making all

reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 217, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

**FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise noted.

On October 27, 2004, Ms. Brown, a student at Simon Gratz High School, was suspended by Officer Hazzard following an altercation involving Ms. Brown's sister and cousin.  (Johnson Dep. at 15.)  When Ms. Brown asked Officer Hazzard about the situation, he allegedly suspended her for interfering with his business.  (Brown Dep. at 15-19.)  According to Officer Hazzard, Ms. Brown was suspended because she refused to return to class after repeatedly being told to do so. (Hazzard Dep. at 40-42, 45-47.)  Ms. Brown then left the school, but later returned with her mother, Ms. Johnson, and with Ms. Harvey.  (Brown Dep. at 39; Johnson Dep. at 24-25.)

Inside the school building the Plaintiffs encountered Office Hazzard, and Ms. Johnson began questioning him about her daughter's suspension.  (Johnson Dep. at 22-25; Hazzard Dep. at 47-48.)[1]  Ms. Harvey and Ms. Brown were directed to leave the building, and Officer Hazzard allegedly told Ms. Johnson that "those two bitches have got to go."  (Id. at 27.)  Ms. Johnson would not allow Ms. Brown and Ms. Harvey to leave, and told the officers as much.  (Id. at 28.)

Plaintiffs claim that Officer Harley grabbed Ms. Harvey, who in a motion of surrender, threw her hands into the air.[2]  (Johnson Dep. at 28; Harvey Dep. at 26-27, 29, 30-31, 55-56.)

---

[1] There is a genuine issue of fact as to whether Ms. Johnson had proper identification. (See Johnson Dep. 23-24, 89-90; Harvey Dep. at 22; Hazzard Dep. at 55.)

[2] Defendants contend that Ms. Harvey and Officer Harley were "struggling and strapping," and that Ms. Harvey swung at Officer Harley.  (Brown Dep. at 27; Hazzard Dep. at 58-60, 66; Harley Dep. at 11-13, 16-17; Rockemore Dep. at 16.)

Officer Harley allegedly threw Ms. Harvey onto the floor.  (Harvey Dep. at 27, 56.)  Ms. Johnson

yelled at him to stop.[3]  (Johnson Dep. at 38.)  Ms. Johnson acknowledges that she has no memory

of the next five to ten minutes, but it is undisputed that Officer Hazzard responded to Ms.

Johnson's actions by grabbing her.  (Id. at 30.)  Ms. Johnson alleges that he also lifted her off her

feet, slammed her onto the floor and dragged her into the police office.[4]  (Johnson Dep. at 30-31,

34; Brown Dep. at 28.)  Ms. Brown then began to spit on, kick and hit Officer Hazzard while

yelling and cursing at him.  (Brown Dep. at 30-32; Johnson Dep. at 33, 84-85.)  Officer

Rockemore grabbed Ms. Brown as she was kicking Officer Hazzard.  (Brown Dep. at 31.)

The officers eventually subdued, handcuffed and arrested the Plaintiffs.  (Brown Dep. at

32-33; Johnson Dep. at 36-37; Rockemore Dep. at 16.)  At some point after the Plaintiffs were

handcuffed, Officer Harley allegedly threw Ms. Harvey into a metal locker.  (Harvey Dep. at 27,

59.)  Ms. Johnson was subsequently taken to Einstein Hospital where she was cleaned up, given

ice and released.  (Johnson Dep. at 45-46.)  Ms. Johnson testified that she later followed up with

Wills Eye Hospital doctors, who checked her eyes and confirmed that her eyes and vision were

not damaged.  However, her medical records indicate that she suffered a superficial puncture and

hemorrhage in her left eye.  (Johnson Dep. at 41-42, 45-46; Pl. Response to School Mot., Ex. D.)

---

[3] Defendants contend that Ms. Johnson also ran at Officer Harley and attempted to intervene.  (Hazzard Dep. at 66-67; Rockemore Dep. at 16; Johnson Prelim. Hearing Tr. at 10-11.)

[4] Officer Hazzard contends that he grabbed Ms. Johnson in an effort to prevent her from interfering in the escalating situation between Ms. Harvey, Ms. Brown and Officer Harley and that Ms. Johnson started swinging and kicking at him.  Officer Hazzard maintains that both he and Ms. Johnson, who was wearing four- to five-inch heels, slipped and fell during the struggle. (Hazzard Dep. at 66-69; Brown Dep. at 28, 41.)

Ms. Harvey was taken to Temple Hospital where she was diagnosed and treated for a fractured

foot.  (Harvey Dep. at 39.)

Ms. Johnson was charged with aggravated assault, simple assault, resisting arrest, and

defiant trespass.  (School Mot., Ex. K.)  The Municipal Court of Philadelphia remanded Ms.

Johnson on the charges of trespass, simple assault and resisting arrest, and dismissed the charge

for aggravated assault.  (Johnson Prelim. Hearing Tr. at 16.)  The charges ultimately were

discharged for lack of prosecution on June 13, 2005.  (School Mot., Ex. K.)

**DISCUSSION**

**I.      Excessive Force**

All three Plaintiffs assert claims of excessive force.  Ms. Brown asserts this claim against

Officer Rockemore, Ms. Harvey against Officer Harley, and Ms. Johnson against Officer

Hazzard.  Defendants move for summary judgment on Ms. Brown and Ms. Johnson's claims.

**A.      Ms. Brown's Excessive Force Claim Against Officer Rockemore**

A claim that a law enforcement officer used excessive force in the course of an arrest,

investigatory stop, or other seizure is analyzed under the Fourth Amendment "reasonableness"

standard.  Graham v. Connor, 490 U.S. 386, 395 (1989).  To determine "reasonableness," courts

must consider "the facts and circumstances of each particular case, including the severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. at

396.  Our court of appeals has listed other relevant factors, including: the duration of the officers'

action; whether the action takes place in the context of effecting an arrest; the possibility that the

suspect may be armed; the number of persons with whom the police officers must contend at one

time; and whether the force applied was of such an extent as to lead to injury.  Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997) (citations omitted).  Although the issue of reasonableness in an excessive force claim is usually a question for the jury, a court may grant summary judgment if it concludes, after resolving all factual disputes in favor of the plaintiff, the officer's use of force was objectively reasonable under the circumstances.  Estate of Smith v. Marasco, 318 F.3d 497, 516 (3d Cir. 2003).

Ms. Brown alleges that Officer Rockemore grabbed her when she ran over to Officer Hazzard as he struggled with Ms. Johnson.  (Brown Dep. at 30-31.)  After pushing Officer Rockemore out of the way, it is undisputed that Ms. Brown kicked and spit on Officer Hazzard. (Id.)  Officer Rockemore attempted to restrain Ms. Brown by pulling her arm behind her back and placing his arm around her neck.  (Id.)  Eventually, Officer Rockemore succeeded in handcuffing her.  (Id.)  Ms. Brown does not allege any physical injuries resulting from the arrest, and Ms. Johnson confirms that when Ms. Brown was "hitting on Mr. Hazzard, one of the guards grabbed [Ms. Brown], but it still never got physical with [Ms. Brown].  He never did anything to hurt [Ms. Brown]."  (Johnson Dep. at 84.)

Even viewing the facts in the light most favorable to Plaintiffs, after evaluating the totality of the circumstances and considering the factors articulated in Graham and Sharrar, the Court cannot conclude that Officer Rockemore's actions were unreasonable.  There were three suspects, Ms. Brown kicked and spat upon a school police officer and pushed Officer Rockemore when he attempted to restrain her, and students were present.  Given these circumstances, Officer Rockemore's decision to use such force as he did was reasonable.  Moreover, the reasonableness of his actions is further supported by Ms. Brown's candid admission that he did not hit, strike, or

use his baton against her.  (Brown Dep. at 31-32.)  Thus, summary judgment in favor of Officer

Rockemore is appropriate as to Ms. Brown's excessive force claim.

    **B.**    **Ms. Johnson's Excessive Force Claim Against Officer Hazzard**

The Supreme Court has held that constitutional excessive force claims generally are

analyzed under the Fourth Amendment's objective "reasonableness" standard rather than the

substantive due process provision of the Fourteenth Amendment.  See Graham, 490 U.S. at 390.

The Supreme Court has subsequently clarified Graham, indicating that it:

> does not hold that all constitutional claims relating to physically
> abusive government conduct must arise under either the Fourth or
> Eighth Amendments; rather, Graham simply requires that if a
> constitutional claim is covered by a specific constitutional provision,
> such as the Fourth or Eighth Amendment, the claim must be analyzed
> under the standard appropriate to that specific provision, not under
> the rubric of substantive due process.

County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (quoting United States v. Lanier, 520

U.S. 259, 272 n.7 (1997)).

Subsequent to this clarification, several courts of appeal have held that the Fourteenth

Amendment is the source of protection from excessive force in claims involving the actions of

school officials toward students.  See, e.g., Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d

246, 252 (2d Cir. 2001) (applying the Fourteenth Amendment's "shocks the conscience" standard

to actions of teacher who injured a student);  Neal v. Fulton County Bd. of Educ., 229 F.3d 1069,

1075 (11th Cir. 2000) (utilizing the Fourteenth Amendment's "shocks the conscience" standard

with respect to a student's allegations of excessive corporal punishment).

Following Lewis, the Third Circuit Court of Appeals has applied the Fourteenth

Amendment "shocks the conscience" standard to evaluate the conduct of school officials, but has

7

not explicitly indicated whether this standard only applies to claims brought by students.  See
Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168, 172 (3d Cir. 2001) (applying the
Fourteenth Amendment's "shocks the conscience" standard to "claims alleging the use of
excessive force by public school officials").  In Gottlieb, the court of appeals analyzed the
rationale for utilizing the Fourteenth Amendment's standard in the context of the school
environment.  Chief among these reasons is the recognition that public schools are in a "unique
constitutional position," because "once under the control of the school, students' movement and
location are subject to the ordering and direction of teachers and administrators."  Id. at 171-72
(citing Wallace by Wallace v. Batavia Sch. Dist. 101, 68 F.3d 1010, 1013 (7th Cir. 1995)).

 The parties dispute whether the level of force used by Officer Hazzard in the present case
should be analyzed under the Fourth Amendment or the Fourteenth Amendment.  Plaintiffs assert
that the analysis in Gottlieb appears to focus on claims involving school officials' use of
excessive force *upon students*, and the facts of that case involved a student being harmed.
Therefore, argue Plaintiffs, because Ms. Johnson is an adult non-student, the Court should apply
the Fourth Amendment's "reasonableness" standard.  Defendants, on the other hand, urge the
adoption of a broader reading of Gottlieb, which would apply the Fourteenth Amendment's
"shocks the conscience" standard to claims of excessive force used by school officials against
non-students and adults.

 The Court has previously applied the "shocks the conscience" standard to an allegation of
excessive force utilized by a school police officer against an adult non-student.  See Cherry v.
Garner, No. 03-1696, 2004 WL 3019241 (E.D. Pa. Dec. 30, 2004).  Cherry involved allegations
that a school police officer caused the plaintiff to sustain "bruises and contusions to her left hand

and left arm as well as the soft tissues of her head and body" when he grabbed her and placed her under arrest."  Id. at *1-2.  The facts of Cherry are similar to the present case in that the law enforcement defendant in each case is alleged to have injured an adult non-student in the context of an arrest.

Many of the public policy reasons for applying the "shocks the conscience" standard to actions against students are pertinent to analyzing a school official's actions against adults on school grounds.  The need to maintain a safe, stable educational environment is an important goal for all schools, and the ability of school officials to maximize its attainment may require restricting the actions of students and adults alike.  Reports of school shootings over the past few years highlight a public policy interest in maintaining at least a semi-closed school environment where all persons on school grounds are under the supervision of school officials.  The need to protect the safety of school children from their peers as well as outsiders supports the  application of the "shocks the conscience" standard to claims of excessive force involving school officials.

Under this standard, the evidence in the record here is insufficient to show a violation of Ms. Johnson's constitutional right to be free from excessive force.  The Third Circuit Court of Appeals' Gottlieb decision sets forth a four-part inquiry: (a) whether there was a pedagogical justification for the use of force; (b) whether the force utilized was excessive to meet the legitimate objective in this situation; (c) whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm; and (d) whether there was a "serious" injury.  Gottlieb, 272 F.3d at 173.  To defeat summary judgment, the evidence must be sufficient for a reasonable fact-finder to find in favor of the plaintiff on all four elements.  See id. at 174 n.2 (declining to discuss the fourth element because

the third element had not been met); Thomas v. Bd. of Educ. of West Greene Sch. Dist., 467 F.

Supp.2d 483, 488 (W.D. Pa. 2006) (noting that "the plaintiff's inability to satisfy any particular

factor [of the Gottlieb test] entitled the defendant to summary judgment").

Here, Ms. Johnson cannot establish the fourth element and, therefore, summary judgment

is appropriate.  Ms. Johnson must demonstrate that she sustained a "serious" injury as a result of

the force used.  No records exist from the hospital where Ms. Johnson was taken for treatment.

Ms. Johnson's treatment consisted of being "cleaned up" and given some ice.  (Johnson Dep. at

45-46.)  Ms. Johnson has produced records from Wills Eye Hospital detailing her visit six days

after her arrest.  (Id.)  While these documents indicate a diagnosis of a superficial puncture and

hemorrhage in her eye, Ms. Johnson testified that the hospital confirmed that her eyes and vision

were fine, and she received no treatment.  (Id.)  In sum, the level of severity of Ms. Johnson's

injury does not rise to the levels of severity found in the case law where summary judgment has

been denied.  Cf. Metzger v. Osbeck, 841 F.2d 518, 521 (3d Cir. 1988) (denying summary

judgment where student received a broken nose, fractured teeth and other injuries requiring

hospitalization); Garcia v. Miera, 817 F.2d 650, 658 (10th Cir. 1987) (denying summary

judgment where student sustained deep bruises, bleeding and permanent scarring); Hall v.

Tawney, 621 F.2d 607, 614 (4th Cir. 1980) (denying summary judgment where student was

hospitalized for 10 days and was treated by specialists for possible permanent injuries to her

lower back and spine).  The Court concludes that no reasonable jury could find that Ms.

Johnson's injuries were so severe that Officer Hazzard's actions constituted "a brutal and

inhumane abuse of official power literally shocking to the conscience."  See Gottlieb, 272 F.3d at

175.

## II.   False Arrest

Plaintiffs assert claims of false arrest against Officers Rockemore, Harley and Hazzard. The Fourth Amendment protects "against unreasonable searches and seizures"  U.S. Const. Amend. IV.  It is undisputed that subsequent to the incident at the school, all three Plaintiffs were arrested, handcuffed and transported to the police station, and thus "seized" within the meaning of the Fourth Amendment.

An arrest may violate the standards of the Fourth Amendment if it is made without probable cause to believe that a crime has been committed.  Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).  Thus, the proper inquiry in a Section 1983 claim based on false arrest is "whether the arresting officers had probable cause to believe the person arrested had committed the offense."  Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). If the arresting officer lacked probable cause to make the arrest, the arrestee also has a claim under Section 1983 for "false imprisonment based on a detention pursuant to that  arrest."  Id. at 636 (citing Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir. 1988)).  Typically, the existence of probable cause in a Section 1983 action is a question of fact.  Wilson v. Russo, 212 F.3d 781, 796 (3d Cir. 2000) (citing Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)); Groman, 47 F.3d at 635.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (citing Orsatti v. New Jersey State Police, 71 F.3d

480, 482 (3d Cir. 1995)).[6]  The probable cause determination "does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime." Radich v. Goode, 886 F.2d 1391, 1397 (3d Cir. 1989). Because the test is an objective one, the intent of the arresting officer is entirely irrelevant to the analysis. Barna, 42 F.3d at 819; Whren v. United States, 517 U.S. 529, 531 (1998).

Here, Plaintiffs have conceded that neither Ms. Brown nor Ms. Harley have viable false arrest claims, leaving only Ms. Johnson's claims against the defendant officers.  (Pl. Response to City Mot. at 5; Pl. Response to School Dist. Mot. at 12.)

### A.    Ms. Johnson's False Arrest Claim Against Officers Rockemore and Harley

The facts relevant to the crimes for which Ms. Johnson was arrested and charged – aggravated assault, simple assault, defiant trespass, and resisting arrest – are disputed.  See 18 Pa. C.S.A. §§ 2702(a), 2702(c)(1), 2701(a), 3503(b), 5104.  Ms. Johnson denies having done anything to legally warrant her arrest.  With respect to the aggravated and simple assault charges, there is a dispute as to whether or not Ms. Johnson ran towards Officer Harley in an aggressive manner and thus attempted to cause bodily injury in violation of Pennsylvania law.  With respect to the resisting arrest charge, the evidence that Ms. Johnson was swinging and kicking at Officer Hazzard as he was attempting to restrain her is also in dispute.  Finally, probable cause as to defiant trespass is contested because there is no evidence in the record that Ms. Johnson ever was told to leave the school.  Indeed, it is undisputed that school officials permitted Ms. Johnson to

---

[6] "The validity of an arrest is determined by the law of the state where the arrest occurred."  United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Ker v. California, 374 U.S. 23, 37 (1963)).  Thus, in this case Pennsylvania law governs this inquiry.

remain on school grounds to speak with the school principal, while Ms. Harvey and Ms. Brown were required to leave.  (School Mot. at ¶ 34.)  In sum, if Ms. Johnson's version of the events is credited, a reasonable fact-finder could conclude that the officers did not have probable cause to arrest Ms. Johnson.  Accordingly, summary judgment is not appropriate on Ms. Johnson's false arrest claim against Officers Rockemore and Harley.

### B.    Ms. Johnson's False Arrest Claim Against Officer Hazzard

As discussed above, the parties disagree as to the facts surrounding the incident, and the Court cannot determine as a matter of law whether probable cause to arrest Ms. Johnson existed.  However, Officer Hazzard also invokes the defense of qualified immunity.

The doctrine of qualified immunity is designed to shield government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v Fitzgerald, 457 U.S. 800, 817-18 (1982).  To determine whether the doctrine applies, courts apply a two-part test.  The Court must determine if the facts show that the government official's conduct violated a constitutional right and, if so, the Court must determine if the constitutional right was clearly established.  Saucier v Katz, 533 U.S. 194, 201 (2001).  A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.

Assuming, *arguendo*, that Officer Hazzard violated Ms. Johnson's right to be free from unreasonable seizure, Officer Hazzard would be entitled to qualified immunity only if it was not clear to a reasonable officer that his conduct was unlawful under the circumstances.  Under Pennsylvania law, it is the responsibility of a school police officer "to enforce good order in

13

school buildings, on school buses and on school grounds in their respective school districts." 24 P.S. § 7-778(c)(1).  Furthermore, Officer Hazzard has the authority to detain a potential wrong-doer until law enforcement can become involved.  24 P.S. § 7-778(c)(3).

The undisputed facts in the record indicate that Ms. Johnson told Ms. Brown and Ms. Harvey to disobey the police officers' orders to leave the school, and that Ms. Johnson was yelling and screaming at the officers.  (Johnson Dep. at 28.)  In addition, at the time of the incident, students were leaving their classes and filling the hallway.  (Rockemore Dep. at 23.)  Under these circumstances, and given a school police officer's obligation to enforce good order and promote safety on school grounds, a reasonable officer could have concluded that it was lawful to detain Ms. Johnson until the Philadelphia police officers made the determination whether or not to arrest her.  Thus, summary judgment is appropriate on Ms. Johnson's false arrest claim against Officer Hazzard.

**III.    Malicious Prosecution**

Plaintiffs have conceded that neither Ms. Brown nor Ms. Harley have viable malicious prosecution claims, leaving only Ms. Johnson's claims against the defendant officers.  (Pl. Response to City Mot. at 5; Pl. Response to School Dist. Mot. at 13.)

The Fourth Amendment protects a person from being subjected to malicious prosecution. To establish a malicious prosecution claim, a plaintiff must prove: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding.  Marasco, 318 F.3d at 521.

14

**A.      Ms. Johnson's Malicious Prosecution Claim Against Officers Rockemore and Harley**

Officers Rockemore and Harley move for summary judgment on the ground that Ms. Johnson did not suffer a deprivation of liberty consistent with concept of seizure as a consequence of the legal proceeding.  They rely upon our court of appeals' determination that attending one's own trial is not a "seizure" for purposes of a malicious prosecution claim. DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005).  In the instant case, however, Ms. Johnson was not merely issued a summons and required to appear in court like the plaintiffs in DiBella.  Rather, Ms. Johnson was arrested and held in police custody for two nights (Johnson Dep. at 65), which amounts to a deprivation of liberty consistent with the concept of a Fourth Amendment seizure.

The evidence in the record also suffices to establish the other four elements.  Defendants do not dispute that they initiated criminal proceedings against Ms. Johnson and that the criminal proceedings ended in her favor.  The existence of probable cause and the officers' intentions are contested, and a reasonable fact-finder could infer malice.  Thus, the malicious prosecution claim against Officers Rockemore and Harley cannot be resolved by summary judgment.

**B.      Ms. Johnson's Malicious Prosecution Claim Against Officer Hazzard**

As previously discussed, most of the material facts are in dispute and Plaintiffs' version of events supports a finding of no probable cause.  While there is no evidence in the record that directly indicates a motive for Officer Hazzard's alleged misconduct, Plaintiffs assert that Officer Hazzard gave inaccurate and incomplete testimony at Ms. Johnson's preliminary hearing.  If credited, a jury could reasonably infer that Officer Hazzard's supposedly false testimony was

evidence of a malicious intent.  See Hinchman v. Moore, 312 F.3d 198, 205 (6th Cir. 2002) (falsifying facts to establish probable cause is a malicious act that supports a claim of malicious prosecution).

Officer Hazzard also asserts that he is entitled to qualified immunity on the malicious prosecution claim.  Qualified immunity is not appropriate, however, because no reasonable officer could have believed that it was lawful to knowingly give inaccurate and incomplete sworn testimony as alleged by Plaintiffs.  Accordingly, the Court must deny summary judgment on Ms. Johnson's malicious prosecution claim against Officer Hazzard.

## IV.     Liability of the City and School District

Plaintiffs assert that the City and the School District are liable for alleged "deliberate indifference to . . . patterns, practices, and customs and to the need for more or different training" with respect to unlawful arrests, use of excessive force, and monitoring and/or investigating problem officers or officers with a history of prior complaints.  (Complaint at ¶ 53.)

The Supreme Court has set forth a two-part analysis to determine municipal liability: "(1) whether a plaintiff's harm was caused by a constitutional violation, and (2) if so whether the city is responsible for that violation."  Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 817 (1985)).  Assuming the existence of a constitutional violation, to prove liability, Plaintiffs must demonstrate that the alleged constitutional violation was the result of a municipal policy, custom or practice.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989) (holding that Plaintiffs must establish "a direct causal link between municipal policy or custom and the alleged constitutional deprivation").

The Plaintiffs concede that they do not have any viable claims against the City (Pl.

Response to City Mot. at 2), but it is unclear if they also have withdrawn their claims against the

School District.[7]  In any event, however, there is no evidence in the record of any policy, custom

or practice causally linked to the alleged constitutional violations.  Furthermore, no evidence has

been produced that reveals any pattern of assault or wrongful detention by school officials.  Thus,

Plaintiffs' claims against the School District must be dismissed.

**V.      State Law Claims**

Plaintiffs also assert Pennsylvania state law claims for assault, battery, false arrest, false

imprisonment, intentional infliction of emotional distress and malicious prosecution.

**A.      State Law Claims Against the School District and the City**

The School District and the City move for summary judgment on Plaintiffs' state law

claims on the grounds that they are barred by the Pennsylvania Political Subdivisions Tort

Claims Act (the "Act"), 42 Pa. C.S.A. § 8541, *et seq.*  While Plaintiffs concede that they do not

have any viable claims against the City (Pl. Response to City Mot. at 2), as previously noted, it is

unclear whether Plaintiffs have also withdrawn their claims against the School District.

The Act provides that "[e]xcept as otherwise provided in this subchapter, no local agency

shall be liable for any damages on account of any injury to a person or property caused by any act

of the local agency or an employee thereof or any other person."  42 Pa. C.S.A. § 8541.

Assuming that Plaintiffs have not withdrawn voluntarily their claims against the School District,

they can only recover for those limited instances permitted by the Act.  Here, Plaintiffs' claims of

---

[7] In their response to the School District's Motion, Plaintiffs merely state that they have
"no response to Defendants' argument as to the School District of Philadelphia."  (Pl. Response
to School Dist. Mot. at 14 n.4.)

assault and battery, false arrest and false imprisonment, intentional infliction of emotional distress, and malicious prosecution do not fit within any of the Act's eight narrow exceptions to immunity.  See 42 Pa. C.S.A. § 8542(b)(1)-(8).  Accordingly, the Court will grant summary judgment in favor of the School District on Plaintiffs' state law claims.

**B.      State Law Claims Against the Individual Defendants**

Officers Rockemore, Harley and Hazzard move for summary judgment on Plaintiffs' state law claims on the grounds that they likewise are protected by the Political Subdivisions Tort Claims Act.  Specifically, they contend that the state law claims cannot survive in the absence of a showing that the officer's acts constituted "a crime, actual fraud, actual malice or willful misconduct."  42 Pa. C.S.A. § 8550.

A finding of willful misconduct requires evidence of an "intention to do what is known to be wrong, namely an intention . . . to arrest and imprison somebody when the officer knows that he does not have probable cause to make the arrest in question."  In re City of Philadelphia Litig., 938 F. Supp. 1278, 1289 (E.D. Pa. 1996); Renk v. City of Pittsburgh, 641 A.2d 289, 293-94 (Pa. 1994).  "Willful misconduct" thus requires the state actor to understand that the actions he took were illegal, and choose to take those actions anyway.  In re City of Philadelphia Litig. I, 938 F. Supp. 1264, 1273 (E.D. Pa. 1996).  To be "willful" conduct, the actor must intend to bring about the result that followed, or at least be aware that it was substantially certain to follow, such that intent may be implied.  Bright v. Westmoreland County, 443 F.3d 276, 287 (3d Cir. 2006) (quoting Robbins v. Cumberland County Children and Youth Servs., 802 A.2d 1239, 1252-53 (Pa. Commw. 2002); Renk, 641 A.2d at 293)).

18

Here, there is sufficient disputed evidence in the record that, if viewed in the light most favorable to Plaintiffs, could permit a conclusion that Defendants may have acted with the knowledge that their conduct was unlawful and with the intention to bring about the likely consequences of that conduct.  Therefore, summary judgment on the basis of immunity is inappropriate.

Summary judgment is also inappropriate as to the merits of Plaintiffs' false arrest, malicious prosecution and intentional infliction of emotion distress claims under state law.  As to Plaintiffs' assault and battery claims, however, the Court will grant summary judgment as the these claims mirror Plaintiffs' constitutional excessive force claims.

In Pennsylvania, "[t]he reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery."  Moore v. Vangelo, 222 F. App'x 167, 172 (3d Cir. 2007) (citing Renk, 641 A.2d at 293).  As previously discussed, the force used by Officers Rockemore and Hazzard was not excessive under the circumstances.  As such, Officers Rockemore and Hazzard are not liable for the state law claims of assault and battery.  Officer Harley is alleged to have thrown a handcuffed Ms. Harvey into a metal locker. As this fact is disputed, the state law claim of assault and battery against Officer Harley cannot be resolved by summary judgment.

A "false arrest" is defined as "(1) an arrest made without probable cause, or (2) an arrest made by a person without privilege to do so."  McGriff v. Vidovich, 699 A.2d 797, 799 n.3 (Pa. Commw. 1997).  The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention.  Renk, 641 A.2d at 293.  As previously discussed, the facts pertaining to the existence of probable cause are disputed and thus, summary judgment

19

must be denied.  The Court will likewise deny summary judgment as to Ms. Johnson's false arrest claim against Officer Hazzard because of genuine factual disputes, and because these factual issues preclude immunity under state law.

A malicious prosecution claim requires proof of the following elements: (1) the defendant must have instituted legal proceedings against the plaintiff without probable cause, (2) with malice, and (3) the proceedings must have terminated in favor of the plaintiff.  Kelley v. Gen. Teamsters, Chauffeurs, and Helpers Local Union 249, 544 A.2d 940, 941 (Pa. 1988).  As previously discussed, the questions of probable cause and malice are in dispute.  Therefore, it is inappropriate to grant summary judgment on Ms. Johnson's malicious prosecution claim.

A tort of intentional infliction of emotional distress occurs "where a person, whose acts constitute extreme or outrageous conduct, intentionally inflicts severe emotional distress on another person."  Williams v. U.S. Airways, Inc., No. 06-4797, 2007 U.S. Dist. LEXIS 65799, *3-4 (E.D. Pa. Sept. 6, 2007) (quoting Tancredi v. Cooper, 2003 U.S. Dist. LEXIS 18109, 2003 WL 22213699, at *5 (E.D. Pa. Sept. 3, 2003)).  Because the Plaintiffs' injuries and the actions of all parties are in dispute, the intentional infliction of emotional distress claims cannot be resolved by summary judgment.  Thus, the motions will be denied as to all of the state law claims except the assault and battery claims against Officers Hazzard and Rockemore.

**CONCLUSION**

The Court will grant Officer Rockemore's Motion for Summary Judgment with respect to the excessive force, assault and battery claims, Officer Hazzard's Motion for Summary Judgment with respect to the excessive force, false arrest, assault and battery claims, and the School District's Motion for Summary Judgment with respect to all claims.  Because there are genuine

issues of material fact with respect to each of the Plaintiffs' remaining federal and state law claims, summary judgment as to those claims will be denied.  Specifically, the following claims may proceed: Ms. Johnson's constitutional false arrest and malicious prosecution claims; Ms. Johnson's state law false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress claims; Ms. Brown's state law intentional infliction of emotional distress claim; and Ms. Harvey's state law assault, battery and intentional infliction of emotional distress claims.

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAMELA JOHNSON, ET AL.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA, ET AL.,** | : | |
| **Defendants** | : | **NO. 06-4826** |

**<u>ORDER</u>**

AND NOW, this 18th day of August, 2008, upon consideration of the Motion of the

School District of Philadelphia and School Police Officer Obie Hazzard for Summary Judgment

(Docket No. 8) and the Motion of the City of Philadelphia, Philadelphia Police Officer Frank

Harley and Philadelphia Police Officer Anthony Rockemore for Summary Judgment (Docket No.

9), and Plaintiffs' responses thereto (Docket Nos. 21 and 22), and the School District and Officer

Hazzard's reply (Docket No. 24), it is hereby ORDERED that both motions are GRANTED IN

PART AND DENIED IN PART as follows:

1.    With respect to Ms. Brown and Ms. Johnson's federal excessive force claims

against Officers Rockemore and Hazzard, Ms. Johnson's federal false arrest claim

against Officer Hazzard, all of the claims against the School District of

Philadelphia, and any state law assault and battery claims against Officers

Rockemore and Hazzard, summary judgment is GRANTED in favor of the

Defendants.

2.    With respect to Ms. Johnson's federal false arrest claims against Officers

Rockemore and Harley, Ms. Johnson's federal malicious prosecution claims

against Officers Rockemore, Harley and Hazzard, Ms. Johnson's state law false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress claims, Ms. Brown's state law intentional infliction of emotional distress claim, and Ms. Harvey's state law assault, battery and intentional infliction of emotional distress claims, summary judgment is DENIED.

IT IS FURTHER ORDERED that Ms. Brown and Ms. Harvey's federal and state false arrest and malicious prosecution claims, and all of the claims against the City of Philadelphia are hereby DISMISSED based on Plaintiffs' counsel's acknowledgement to the Court that Plaintiffs will not pursue these claims at trial.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge